726 F.2d 525
 115 L.R.R.M. (BNA) 2977, 100 Lab.Cas. P 10,817
 TOYOTA LANDSCAPE COMPANY, INC., and Sun-Land Nurseries,
Inc., California corporations, Appellants,
v.
BUILDING MATERIAL AND DUMP TRUCK DRIVERS LOCAL 420,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, an unincorporated
association, Appellee.
TOYOTA LANDSCAPE COMPANY, INC., and Sun-Land Nurseries,
Inc., California corporations, Appellees,
v.
BUILDING MATERIAL AND DUMP TRUCK DRIVERS LOCAL 420,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, an unincorporated
association, Appellant.
TOYOTA LANDSCAPE COMPANY, INC. and Sun-Land Nurseries, Inc.,
California corporations, Appellants,
v.
BUILDING MATERIAL AND DUMP TRUCK DRIVERS LOCAL 420,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, an unincorporated
association, Appellee.
 Nos. 83-5644, 83-5659 and 83-6545.
 United States Court of Appeals,
Ninth Circuit.
 Argued Nov. 8, 1983.
Decided Feb. 21, 1984.
 
 Spencer Hipp, San Francisco, Cal., Littler, Mendelson, Fastiff & Tichy, San Diego, Cal., for appellants.
 Robert D. Vogel, Pappy, Kaplon, Vogel & Phillips, Los Angeles, Cal., for appellee.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN and ANDERSON, Circuit Judges, and KING*, District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 Two landscape employers appeal the dismissal of their action for breach of contract filed under 29 U.S.C. Sec. 185(a) against Local 420 and an action for "conspiracy to breach contract" against Local 420 and two other unions. Originally four landscapers sought damages, specific performance, punitive damages, attorneys' fees and costs. The trial court dismissed the conspiracy claim with prejudice. The claims for punitive damages and attorneys' fees were also stricken. One landscaper was dismissed from the action with prejudice. After a two-day trial on liability, the court found for Local 420. Only two landscapers appeal.
 
 
 2
 From 1978 to March 1980 the landscapers had collective bargaining agreements with Local 420. In December 1979 the Teamsters and Laborers unions made a jurisdictional agreement. In contract negotiations with landscapers in early 1980, Local 420 and the Laborers were represented by the same attorney. Pursuant to the jurisdictional agreement, Local 420 would negotiate only for employees who drove trucks, while the Laborers would represent other employees. Negotiations broke off. However, in early 1981, Local 420 executed a three-year collective bargaining agreement with landscapers covering all employees. Landscapers argue that Local 420 made the 1981 agreement pursuant to a modification of the jurisdictional agreement between itself and the Laborers. Both sides agree that Local 420 was dissatisfied with Laborers' compliance with the jurisdictional agreement.
 
 
 3
 Oliver Traweek, the Local 420 official who executed the agreement, was removed from office by the Teamsters for engaging in "fiscal improprieties." Richard Martino, who had lost to Traweek by three votes in the previous election for Secretary-Treasurer, was appointed to replace Traweek. Landscapers assert that because Martino feared Traweek would become eligible to run against him in the next election, and because Martino learned that 400 votes of landscaping employees had been illicitly voted against him in the last election, Martino disclaimed interest in representing the landscaping employees, thereby disenfranchising them. Landscapers assert that the employees objected, in part because they would lose their time investment in the Teamsters' pension fund. Local 420 asserts that Martino disclaimed interest in representing the employees in the hope of improving relations with the Laborers. Local 420 admits that Martino disclaimed interest without consulting the Laborers.
 
 
 4
 As a result of the union's disclaimer of interest, landscapers claimed damages in their complaint because, by virtue of working for general contractors required to contract only with subcontractors using union labor, landscapers were forced to pay higher wages to non-Teamster labor than they would have paid under their collective bargaining agreements with Local 420.
 
 1. JURISDICTION
 
 5
 Landscapers claimed jurisdiction in district court under section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. Sec. 185(a), which provides:
 
 
 6
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 7
 Local 420 contested jurisdiction by motions to dismiss and motions for summary judgment, claiming that exclusive jurisdiction rested with the N.L.R.B. The trial court properly denied Local 420's motions. Northern California District Council of Hod Carriers v. Opinski, 673 F.2d 1074 (9th Cir.1982). The N.L.R.B. and district court share concurrent jurisdiction over cases legitimately involving both unfair labor practice charges and breach of collective bargaining agreement claims. Although the N.L.R.B. administratively determined that landscapers' unfair labor practice claims were without merit (a determination within its primary jurisdiction), under Opinski there is no bar to district court jurisdiction to pass on the breach of collective bargaining agreement claims. Indeed, section 301 authorizes federal courts to develop a federal common law regarding enforcement of collective bargaining agreements. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Hendricks v. Airline Pilots Association, 696 F.2d 673, 676 (9th Cir.1983). Case law is to be fashioned from the policy of national labor laws. Id. Accordingly, jurisdiction in the district court was proper. Glaziers & Glassworkers Local 767 v. Custom Auto Glass Distributors, 689 F.2d 1339 (9th Cir.1982), does not support Local 420 in objecting to district court jurisdiction. Glaziers notes that section 301 was intended to permit federal court jurisdiction in disputes that focused on the terms of the collective bargaining agreement.
 
 
 8
 In the instant case, breach of contract, specifically of the no strike provision, between landscaper employers and Local 420, a labor organization, has been alleged as required by Painting & Decorating Contractors Association v. Painters & Decorators Joint Committee, 707 F.2d 1067, 1070-1071 (9th Cir.1983) and cases cited therein. Glaziers' finding against district court jurisdiction must be read in the context of the facts. In Glaziers, employers were trying to avoid an agreement by arguing that the union did not represent a majority of employees when the agreement was made. That is exactly the kind of question over which the N.L.R.B. has primary jurisdiction. In the instant case the issue is whether the union breached an admittedly valid agreement. That is the kind of common law question that courts traditionally decide. It is also noteworthy that in its nonevidentiary administrative proceeding, the N.L.R.B. determined only that there was no unfair labor practice; it did not reach the breach of contract issue. Local 420 asserts additional arguments in objecting to subject matter jurisdiction in the district court, but none that deserves comment.
 
 2. CONSPIRACY
 
 9
 Initially, in responding to Local 420's motion to dismiss landscapers' claim for "conspiracy to breach the contract," the trial judge granted the dismissal without prejudice. During that hearing the trial judge informed landscapers that they could file an amended complaint. When they did not, the trial judge dismissed the claim with prejudice.
 
 
 10
 "In the final analysis, the court of appeals will overturn a district court's dismissal pursuant to Rule 41(b) only where it is apparent that the court abused its discretion. [citations]" Schmidt v. Herrmann, 614 F.2d 1221, 1224 (9th Cir.1980), accord Nevijel v. North Coast Life Insurance Co., 651 F.2d 671 (9th Cir.1981). Because of landscapers' failure to amend, there was no abuse of discretion.
 
 3. BREACH OF CONTRACT
 
 11
 The trial court erred in finding that Local 420's disclaimer of interest was lawful because tendered in good faith for legitimate business reasons. Good faith is not the correct test. Sound policy reasons counsel against local unions repudiating contractual obligations whether to promote harmony with other unions or to resolve some intra-union political dispute. In view of the 29 U.S.C. Sec. 185(a) authorization to the federal courts to develop federal common law (based on the policies of national labor laws) we choose the rule that will promote the enforcement of collective bargaining agreements. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Hendricks v. Airline Pilots Association, 696 F.2d at 676; Rehmar v. Smith, 555 F.2d 1362, 1366-67 (9th Cir.1976).
 
 
 12
 The good faith standard used by the trial court apparently comes from Dycus v. N.L.R.B., 615 F.2d 820 (9th Cir.1980), dealing with an employee's grievance for being involuntarily transferred from one Teamster local to another. Good faith was an appropriate inquiry in Dycus but the facts in Dycus are distinguishable from those in the instant case. Here, Local 420 has effectively repudiated the collective bargaining agreement by disclaiming interest in representing all the employees covered. Dycus dealt with a union's duties to its members, not with fulfillment of its contractual obligations to other contracting parties.
 
 
 13
 The no-strike section of the three-year collective bargaining agreement between Local 420 and landscapers provides that the union shall not engage in any "kind of activity that interferes with or interrupts the Company's operations...." Landscapers propose essentially three policy reasons why the union should not be allowed to breach this provision.
 
 
 14
 First, under Hendricks, 696 F.2d at 676, collective bargaining pursuant to the Labor Management Relations Act is not just a mechanism of private agreement, but rather an instrument of government. Moreover, the unilateral disenfranchisement of the landscapers' employees defies the policy that employees should have freedom of choice in selection of their bargaining agent. The N.L.R.B. has repeatedly stressed the importance of employees voting on changes in union jurisdiction. In these cases, employers also have successfully protested the lack of a vote. Gas Service Co., 213 N.L.R.B. 932 (1974); Carriage Oldsmobile Cadillac, Inc., 210 N.L.R.B. 620 (1974); Gulf Oil Corp., 135 N.L.R.B. 184 (1962).
 
 
 15
 Second, allowing Local 420 to walk away from its agreement disrupts industrial stability, a value proclaimed by N.L.R.B. v. Circle A & W Products Co., 647 F.2d 924, 926 (9th Cir.) cert. denied, 454 U.S. 1054, 102 S.Ct. 600, 70 L.Ed.2d 590 (1981). In fact, Local 420's disclaimer has caused substantial disruption for landscapers because they have had to employ non-Teamster union labor.
 
 
 16
 Third, permitting Local 420 to escape its bargain impugns the integrity of the collective bargaining process. In Mack Trucks, Inc., 209 N.L.R.B. 1003 (1974), the Board stated that even though it had a policy in representation proceedings of attempting to accommodate "no-raiding" agreements, it would be contrary to the principle of the Act for a union to disclaim interest in a contract for the purpose of avoiding its terms. Accord East Manufacturing Corp., 242 N.L.R.B. 5 (1979). To permit the union to repudiate its bargain is unfair and would make it more difficult for similar bargains to be struck in the future.
 
 
 17
 For these reasons, we hold as a matter of law that Local 420's disclaimer violated the collective bargaining agreement. Under this standard it does not matter whether Local 420's disclaimer was for the "good faith" motivation of improving relations with the Laborers or for the "bad faith" motivation of an internal power struggle. The case is remanded for further proceedings on the issue of damages. We need not reach the question whether the trial court should have reopened the case pursuant to Fed.R.Civ.P. 60(b) as the matter is moot.
 
 
 18
 Reversed and remanded.
 
 
 
 *
 The Honorable Samuel P. King, Chief Judge, United States District Court for the District of Hawaii, sitting by designation