[No. B173066. Second Dist., Div. Five. Feb. 14, 2005.]

ERNEST LEEP, Plaintiff and Appellant, v.
AMERICAN SHIP MANAGEMENT, LLC, Defendant and Respondent.

## COUNSEL

Preston Easley for Plaintiff and Appellant.

Kaye, Rose & Maltzman; Elsa M. Ward and Aksana Moshaiv for Defendant and Respondent.

## OPINION

**MOSK, J.**—Plaintiff and appellant Ernest Leep (appellant) appeals from a summary judgment in favor of defendant and respondent American Ship

Management, LLC (respondent) in appellant's action for unearned wages. Appellant claims that he was injured aboard respondent's vessel, the M/V President Truman (Truman), during a 90-day employment engagement and that respondent owes him unearned wages for the entire 90-day period. Appellant relies on a 1994 memorandum of understanding between respondent and appellant's union, stating that "Second Assistant Engineer and Third Assistant Engineer rotary assignments shall be for ninety (90) days." Appellant was assigned to respondent's vessel as a third assistant engineer pursuant to a union dispatch slip stating that his assignment was for a "90 day rotary." Respondent asserts that the collective bargaining agreement provides for "maintenance and cure as customary" and that customarily an injured seaman is only entitled to wages to the end of a voyage. Respondent argues that there was no voyage due to a labor dispute, and that appellant was properly paid the correct amount through the date he left the vessel because of an injury.

■ We hold that the provision of the 1994 memorandum of understanding concerning 90-day rotary assignments raises a triable issue of material fact as to whether appellant's employment on respondent's vessel was for a 90-day period, and that respondent's evidence of what is customary is insufficient to support the summary judgment. We accordingly reverse the judgment.

## BACKGROUND

Appellant is an engineer and a member of the Marine Engineers' Beneficial Association (MEBA). Respondent is the owner of the Truman, the vessel on which appellant was injured while working as a third assistant engineer. Respondent executed a MEBA collective bargaining agreement dated 1986–1990 that governs the employment of MEBA members aboard dry cargo vessels. The evidence suggests that other shipping companies are parties to the collective bargaining agreement. Respondent and MEBA executed various memoranda of understanding, including a 1994 memorandum of understanding. There is no indication that these memoranda of understanding were applicable to, or to be executed by, other shipping companies. Paragraph 11 of the 1994 memorandum of understanding states: "Second Assistant Engineer and Third Assistant Engineer rotary assignments shall be for ninety (90) days. It is understood that the length of rotary assignments on foreign to foreign shuttle vessels shall remain unchanged."

MEBA issued a relief clearance card to appellant, stating that he was assigned to the Truman for an "Approx. No. of Relief Days" for a "90 day rotary." Appellant commenced working aboard the Truman on October 7,

2002. At that time, the Truman was berthed at Terminal Island for an indefinite period of time because of a labor dispute between the Pacific Maritime Association (PMA) and the International Longshoremen's and Warehousemen's Union (ILWU). The Truman had been engaging in 35-day foreign voyages from Oakland, California to Japan, China, Hong Kong, and Taiwan and returning to San Pedro, California and had been scheduled to depart from San Pedro to Oakland on October 9, 2002. Because of the PMA-ILWU dispute, however, the vessel was unable to depart, and the crew members were employed coastwise aboard the Truman.

On October 14, 2002, appellant was injured while operating a portable crane aboard the Truman. He left the vessel that day to receive medical treatment and was unable to return to work until January 6, 2003. Appellant was paid through October 14, 2002.

The Truman departed from San Pedro on October 19, 2002, and arrived in Oakland on October 20, 2002. Respondent paid the coastwise crew through October 20, 2002. On October 26, 2002, the vessel departed from Oakland for its foreign voyage to the Orient. Seamen aboard the Truman executed foreign voyage articles before departing from Oakland. Appellant was not aboard the Truman when the ship departed on October 26, 2002, and did not execute foreign voyage articles.

On November 13, 2002, appellant filed his complaint in the instant action, alleging causes of action for negligence, unseaworthiness, and maintenance and cure, seeking, among other damages, the unearned wages that are the subject of this appeal and his attorney fees. Appellant waived his right to a jury trial.[1]

Appellant moved for partial summary judgment on his maintenance and cure cause of action, arguing that his assignment to the Truman had been for a 90-day period and that he was entitled to unearned wages for the entire 90 days. The trial court denied the motion on the ground that an issue of material fact existed as to whether appellant had been guaranteed employment aboard the Truman for 90 days.

Respondent subsequently brought its own motion for summary adjudication of appellant's maintenance and cure claim, arguing that respondent had paid all wages owed to appellant under federal maritime law and the

---

[1] We granted respondent's request to take judicial notice of the portion of the record in which appellant waived a trial by jury.

collective bargaining agreement with appellant's union; or alternatively, that appellant could not establish a definite period of employment for 90 days. Respondent contended that section 7 of the collective bargaining agreement with MEBA provided for the payment of "maintenance and cure as customary," and that it was respondent's long-standing custom and practice to pay a crewman employed coastwise through the date of his departure from the vessel and to pay a crewman employed for a foreign voyage through the end of that voyage. Respondent filed in support of its motion the collective bargaining agreement; the subsequent memoranda of understanding; the declaration of Ron McCauley, a crewing manager employed by respondent or by respondent's predecessor in interest for 46 years; and a separate statement of undisputed material facts. Mr. McCauley stated in his declaration in part: "ASM [respondent] has never paid unearned wages to any seaman beyond the date of a foreign voyage. In situations where seamen are employed coastwise aboard ASM vessels and they become injured, the practice is to pay wages through the day in which the seaman leaves the vessel." Paragraph 3 of respondent's separate statement states: [¶] "Plaintiff did not sign ship's articles, and October 14, 2003, he was employed coastwise at Terminal Island, solely due to the PMA-ILWU Labor dispute and related lockdown of California ports. ASM did not agree plaintiff would be employed coastwise for any definite period of time, as the time period in which the strike would remain in effect necessarily remained uncertain."

Appellant argued in opposition to respondent's motion that his 90-day period of employment was established by paragraph 11 of the 1994 memorandum of understanding that provided, "Third Assistant Engineer rotary assignments shall be for ninety (90) days" and by a relief clearance card issued by MEBA assigning appellant to the Truman for a "90 day rotary." Appellant's opposition was supported in large part by his own declaration, in which he asserted that his 90-day assignment to the Truman had been pursuant to MEBA dispatch procedures and the terms of the 1994 memorandum of understanding between MEBA and respondent; that 90-day relief assignments typically cover more than one actual voyage; and that the captain of the Truman would not have permitted appellant aboard had the captain disagreed with the 90-day assignment specified on his relief clearance card.

Respondent filed evidentiary objections to appellant's declaration on the grounds that appellant lacked personal knowledge and any foundational basis to attest to MEBA's dispatch procedures, the meaning of the collective bargaining agreement between respondent and MEBA, the typical length of MEBA assignments aboard respondent's vessels, and the intent of the Truman's captain in permitting appellant aboard. Appellant did not respond to the evidentiary objections. The trial court sustained the objections

and thereby excluded from evidence portions of the declaration to which respondent had objected. The court did not exclude from evidence the 1994 memorandum of understanding or the union dispatch slip issued by MEBA assigning appellant to the Truman for a "90 day rotary." The trial court granted respondent's motion for summary adjudication and dismissed appellant's third cause of action for maintenance and cure. Appellant then dismissed with prejudice his remaining causes of action, and the trial court granted summary judgment in respondent's favor. Appellant appeals from the summary judgment but has not challenged the trial court's evidentiary rulings.

We requested supplemental briefing from the parties as to whether appellant's failure to dispute paragraph 3 of respondent's separate statement of undisputed material facts precluded appellant from contending there was an agreement that he was employed aboard respondent's vessel for any definite period of time, and, if not, whether paragraph 11 of the 1994 memorandum of understanding raised a triable issue of fact. In his supplemental brief, appellant stated that his failure to dispute respondent's statement that there had been no agreement to employ appellant coastwise for any definite period of time did not preclude him from arguing that he had been assigned to respondent's vessel for a 90-day period of employment; that the 90-day period encompassed both coastwise and overseas employment; and that his 90-day assignment did not distinguish between coastwise and overseas periods of employment.

Respondent contended that appellant was bound by failing to dispute in his separate statement the contention that there was no agreement for a definite period of employment. Respondent also argued that appellant's entire period of employment, including the coastwise portion, was indefinite because respondent could discharge appellant for cause; appellant could unilaterally terminate his foreign voyage employment in a United States port upon 24 hours' notice; appellant could be laid off in any United States port if the ship was inactive for any reason; appellant could leave the ship without notice when working coastwise in any United States or Puerto Rican port; both appellant and respondent could mutually terminate his employment for any reason; and appellant could fail to join the ship in a timely manner before it departed from a port.

## DISCUSSION

A. *Standard of Review and Applicable Law*

■ Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c,

subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ Summary judgment is a drastic procedure, however, and should be used cautiously so that it is not a substitute for a trial on the merits as a means of determining the facts. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].) "Upon a motion in summary judgment, the controlling question before the trial court is whether there is a material issue of fact to be tried. If the trial court determines there is one, it is powerless to proceed further. The issue must be decided in trial by the finder of fact." (*Haskell v. Carli* (1987) 195 Cal.App.3d 124, 132 [240 Cal.Rptr. 439]; see also *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 436, fn. 7 [186 Cal.Rptr. 228, 651 P.2d 815].) ■ On appeal from a summary judgment, an appellate court "review[s] the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

The parties have not raised any issue about the applicable law. Generally, when issues involve a collective bargaining agreement or admiralty law, federal law would apply. (See *Lingle v. Norge Div. of Magic Chef* (1988) 486 U.S. 399 [100 L.Ed.2d 410, 108 S.Ct. 1877] [interpreting collective bargaining agreement is federal question]; *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 220 [85 L.Ed.2d 206, 105 S.Ct. 1904]; *Kossick v. United Fruit Co.* (1961) 365 U.S. 731, 735 [6 L.Ed.2d 56, 81 S.Ct. 886] [admiralty law]; *Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture* (2002) 100 Cal.App.4th 991, 997 [123 Cal.Rptr.2d 85] [state courts apply federal substantive law in deciding cases governed by admiralty law]; *D'Aquisto v. Campbell Industries* (1984) 162 Cal.App.3d 1208 [209 Cal.Rptr. 108].) Here, although we must examine the collective bargaining agreement, we only determine whether or not there are triable issues of fact. We do not have to determine the applicable law. (*Aguilar v. International Longshoremen's Union Local # 10* (1992) 966 F.2d 443, 445, fn. 2 ["if we analyze a section 301 claim [Labor-Management Relations Act, 29 U.S.C., § 185] under federal law, we look to state law for guidance"]; see also *Norfolk Southern R. Co. v. James N. Kirby* (2004) 543 U.S. 14 [160 L.Ed.2d 283, 125 S.Ct. 385].)

## B. *Unearned Wages Claim*

Vessel owners owe unique obligations to employees who become sick or injured. Without regard to fault, a vessel owner must pay an injured or ill seaman a remedy known as "maintenance and cure." "[T]he elements of the common law maintenance and cure action included a living allowance during the recovery period (maintenance), reimbursement for medical expenses (cure), and unearned wages for the period from the onset of injury or illness until the end of the voyage." (*Gardiner v. Sea Land Service, Inc.* (9th Cir. 1986) 786 F.2d 943, 946.) " 'Maintenance' is compensation for room and board expenses incurred while the seaman is recovering from the illness or injury. The vessel owner is also obliged to pay the seaman's medical expenses until he reaches maximum recovery, or 'cure.' The vessel owner must pay unearned wages for a limited period. . . . [¶] Unearned wages, a component of maintenance and cure, are different from lost wages. The term refers to the actual wages the seaman did not earn because of his injury or illness. [Citation.] [¶] 'Generally speaking, . . . whether the employment is for a voyage or for a definite time, it is the shipowner's obligation to pay a seaman who falls ill or is injured while in service of the vessel, full wages throughout the period of employment.' [Citations.]" (*Berg v. Fourth Shipmor Associates* (9th Cir. 1996) 82 F.3d 307, 309 (*Berg*); see 1 Schoenbaum, Admiralty & Maritime Law (4th ed. 2004) § 6-28, pp. 376–381 (Schoenbaum); *Baptiste v. Superior Court* (1980) 106 Cal.App.3d 87, 98 [164 Cal.Rptr. 789].) Thus, the extent of a vessel owner's obligation to pay unearned wages depends on the duration of the injured seaman's employment.

(6) The length of a seaman's employment is determined by the seaman's shipping articles or other evidence of the seaman's term of employment. (Schoenbaum, *supra*, § 6-29, p. 382.) Shipping articles are a type of engagement agreement between the seaman and the shipowner, in which the owner agrees to pay wages for services rendered by the seaman.[2] (*Blainey v. American Steamship Co.* (6th Cir. 1993) 990 F.2d 885, 888 (*Blainey*).) They "constitute[] the contract of employment between the ship and the crew, as well as the individual contract with each seaman." (Schoenbaum, *supra*, § 6-3, p. 274.) "When a seaman and vessel owner sign 'voyage articles,' the determination of unearned wages is easy. Under voyage articles, the seaman signs on for one voyage, which may last for several months. If he is injured, his employer owes him wages to the end of that voyage or to the date that he reaches

---

[2] Shipping articles for foreign and intercoastal voyages and for coastwise voyages are required by statute and must specify the nature of the voyage or the period of time for which the seaman is engaged. (46 U.S.C. §§ 10302, 10305, 10502; but see *Berg, supra,* 82 F.3d at pp. 309–310.) The requirement of written articles are "for the protection of the seaman . . . and, in no way assumes the invalidity of such contracts in the absence of writing." (*Kossick v. United Fruit Co., supra,* 365 U.S. at p. 734, fn. 4.)

maximum cure, whichever is sooner." (*Berg, supra,* 82 F.3d at pp. 309–310.) Here, respondent and appellant did not enter into shipping articles.

█ The terms of employment may also be governed by a collective bargaining agreement negotiated by the seamen's union with a shipowner. (See *Berg, supra,* 82 F.3d at pp. 309–310 [shipping articles may be an unnecessary technicality if the seaman in question is covered by a comprehensive collective bargaining agreement that serves the same function and a court may be receptive to the argument that a collective bargaining agreement is the functional equivalent]; see also *Blainey, supra,* 990 F.2d at p. 888.) In this case, appellant's union and respondent did enter into a collective bargaining agreement.

At issue in this case is appellant's entitlement to unearned wages, which entitlement depends upon his period of employment aboard respondent's vessel. Appellant claims he was assigned to the Truman for a 90-day period; that he was paid only through the date of his October 14, 2002 injury and departure; and that respondent owes him $41,501.00 in unearned wages from October 15, 2002, through January 4, 2003, the remainder of the 90-day employment period. He contends the trial court erred in granting summary judgment because an issue of material fact exists as to whether he was employed for a definite 90-day period.

Appellant relies on paragraph 11 of the 1994 memorandum of understanding between respondent and MEBA, which paragraph states that, "Second Assistant Engineer and Third Assistant Engineer rotary assignments shall be for ninety (90) days." This provision appears to apply to this case. Appellant was assigned to the Truman as a third assistant engineer, and appellant's union dispatch slip states that his assignment to the Truman was for a "90 day rotary."

Appellant's failure to dispute paragraph 3 of respondent's separate statement normally would be construed for purposes of the summary judgment motion as a concession that there was no contract for a specified term. (See Weil & Brown, Cal. Practice Guide, Civil Procedure Before Trial (The Rutter Group 2004) ¶ 10:194, p. 10-67.) Because the duty to provide maintenance and cure requires payment of unearned wages only through the period of employment and disability (*The Osceola* (1903) 189 U.S. 158, 175 [47 L.Ed. 760, 23 S.Ct. 483]), the absence of a fixed period of employment would rule out any duty to pay unearned wages. (*Berg, supra,* 82 F.3d at p. 312.)

█ In this case, however, appellant explains his failure to dispute this statement on the basis that it dealt only with the coastwise portion of a voyage and that his 90-day assignment to the vessel encompassed both

coastwise and overseas portions of the voyage. In a summary judgment proceeding, "the moving party's supporting documents ' "are strictly construed and those of his opponent liberally construed, . . ." ' [Citations.]" *(Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 500 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

█ Even if appellant's explanation is not wholly satisfactory, a court has discretion not to treat appellant's failure to dispute paragraph 3 of respondent's separate statement as a binding concession in light of the other portions of the response to the separate statement and the evidence as a whole. (See *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1225, fn. 2 [63 Cal.Rptr.2d 422]; *Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 112–116 [54 Cal.Rptr.2d 669]; cf. *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 316 [125 Cal.Rptr.2d 499].) Code of Civil Procedure section 437c, subdivision (c) states that "[i]n determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence. . . ." " ' "In making this determination, . . . [w]e accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence . . . . In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true." [Citations.]' " *(Fraizer v. Velkura* (2001) 91 Cal.App.4th 942, 945 [110 Cal.Rptr.2d 918].) Moreover, " ' "summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence." [Citations.]' " *(Wright v. Stang Manufacturing Co., supra,* 54 Cal.App.4th at p. 1225, fn 2.)

The evidence as a whole, including appellant's entire separate statement, shows that a triable issue exists as to the period of appellant's employment. Appellant's response to the very next alleged undisputed fact in respondent's separate statement shows that appellant did dispute the period of employment. Paragraph 4 of respondent's separate statement states: "The written contract between [respondent] and [appellant's union] governing [appellant's] employment is a Union Collective Bargaining Agreement . . . ." Appellant responded: "Disputed. Plaintiff's employment was also governed by a Memorandum of Understanding and [p]laintiff's union dispatch slip." Appellant's response cites as evidence a paragraph of his declaration that expressly refers to a 90-day period of employment. As we discuss, that memorandum of understanding and dispatch slip create a triable issue as to appellant's right to maintenance and cure.

 " 'Summary judgment is also inappropriate where the opposing party submits evidence indicating that a mistake was made.' " (*Wright v. Stang Manufacturing Co., supra,* 54 Cal.App.4th at p. 1225, fn. 2 [summary judgment improper when it was clear that the plaintiffs made a mistake in responding "undisputed" to the defendant's separate statement that deck gun did not cause the plaintiffs' injuries and such assertion contradicted other portions of the plaintiffs' response to the separate statement].) Appellant's opposition papers show that the failure to dispute paragraph 3 of respondent's separate statement was inadvertent and should not be construed as a binding admission that there was no agreement on a term of employment. The entirety of appellant's argument, as set forth in his opposition to respondent's motion, was premised on the existence of a 90-day period of employment. In litigating the summary judgment motion, neither the parties nor the trial court relied upon appellant's response to paragraph 3 of respondent's separate statement. We therefore conclude that appellant's response to that paragraph in respondent's separate statement does not require us to affirm the summary judgment.

Respondent contends that section 7 of the collective bargaining agreement between respondent and appellant's union limits appellant's unearned wages claim. Section 7 of the collective bargaining agreement provides in relevant part: "Licensed engineer officers of the classifications hereby designated (or equivalent classifications, regardless of what titles may be used by the respective Company) shall be paid the following monthly wages together with subsistence, quartering, maintenance and cure as customary." Respondent relies upon the declaration of Ron McCauley, who attested to respondent's "practice" of paying unearned wages to a seaman employed coastwise aboard respondent's vessels only through the date the seaman left the vessel, as evidence of what is "customary" within the meaning of this provision.

Evidence of respondent's "practice" concerning the payment of unearned wages does not necessarily establish customary maintenance and cure within the meaning of section 7 of the collective bargaining agreement. The collective bargaining agreement itself does not define the term "customary," nor does it specify the context for determining what is "customary." Because the collective bargaining agreement indicates that it is intended to be entered into with a number of companies, "customary" could refer to that which is customary within the industry and not just as to one employer.

 Indeed, custom and usage are applied to construe contracts in admiralty. (See *Ramirez v. United States* (N.D.Fla. 1991) 767 F.Supp. 1563, 1572.) The declaration of Ron McCauley refers only to *respondent's* "practice" of paying unearned wages to an injured seaman employed coastwise aboard its vessels and therefore does not necessarily constitute evidence of what was "customary" within the shipping industry as a whole. Respondent

suggests that the evidence of its practices is at least some evidence of what is customary, and is uncontradicted. But it is not uncontradicted because appellant submitted the 1994 memorandum of understanding—which is later in time than the collective bargaining agreement. Paragraph 11 seemingly evidences a 90-day "rotary assignment" for second and third assistant engineers aboard respondent's vessels. Appellant also introduced a union dispatch slip that seems to confirm his assignment aboard the Truman was for a "90 day rotary."

Thus both parties have relied upon conflicting documents and provisions that they claim are applicable. In doing so, the parties submitted conflicting evidence on the issue of which provision governs. Appellant relied on the memorandum of understanding and the union dispatch slip, while respondent submitted what it says is evidence regarding what is "customary" under section 7 of the collective bargaining agreement.

There is conflicting evidence on how to interpret the writings even if they are applicable. A 90-day assignment would conflict with what respondent asserts is its practice, assuming the 90-day provision is applicable to "maintenance and cure." It is not clear whether the 90-day "rotary assignment" referred to in the memorandum of understanding specifies a period of employment and is applicable to maintenance and cure. Each party relies on different documents as evidence of the meaning of what he or she contends is the governing one. Such conflicting parol evidence on the meaning of an ambiguous term creates a question of fact (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351 [8 Cal.Rptr.3d 649]) that precludes summary judgment. (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 [50 Cal.Rptr.2d 323].)

As one court has noted, " 'When the meaning of the language of a contract is doubtful or uncertain and parol evidence is introduced in aid of its interpretation, "the question of meaning is one of fact." [Citation.] The contract . . . language is sufficiently broad, uncertain in its meaning to require an examination into extrinsic circumstances to ascertain the intent of the parties. In such circumstances it is the primary duty of the trial court to construe the language after a full opportunity afforded to all parties in the case to produce evidence of facts, circumstances and conditions surrounding its effect and the conduct of the parties relating thereto. [Citation.] Such duty is not performed, cannot be performed by the summary judgment procedures.' " (*Haskell v. Carli, supra,* 195 Cal.App.3d at p. 132, quoting *Loree v. Robert F. Driver Co.* (1978) 87 Cal.App.3d 1032, 1039–1040 [151 Cal.Rptr. 557].) "Given the ambiguity inherent in the agreement and the circumstances surrounding its creation," (*Haskell v. Carli, supra,* 195 Cal.App.3d at p. 133) and the uncertainty of the application of the agreement to the facts in this case, summary judgment is not appropriate.

 Because of the paucity of appellant's submission that was admitted in evidence, whether respondent is entitled to summary judgment is a close question. We nevertheless follow the precept that "[b]ecause a summary judgment denies the adversary party a trial, it should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305 [130 Cal.Rptr.2d 347]; see *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46] [summary judgment a "drastic measure"].)

For these reasons, we reverse the summary judgment.

## DISPOSITION

The judgment is reversed. Appellant shall recover his costs on appeal.

Armstrong, J., concurred.

**TURNER, P. J.,** Concurring.—I concur in the judgment. I write separately to emphasize the extremely difficult nature of this case created by the concession in plaintiff's separate statement of undisputed facts that there was no contract for a specified term. Plaintiff's opposition separate statement can be read to explicitly admit there was no agreement for a "definite period of time." Under virtually every conceivable set of circumstances, such a concession would require entry of summary judgment. As my colleagues aptly note, the duty to provide maintenance and cure requires payment of wages throughout the period of employment and disability. (*The Osceola* (1903) 189 U.S. 158, 175 [47 L.Ed. 760, 23 S.Ct. 483]; *Griffin v. Oceanic Contractors, Inc.* (5th Cir. 1981) 664 F.2d 36, 39.) Hence, if there is no period of employment during which plaintiff was unable to work, there was no duty to pay the unpaid wages sought in the third cause of action.

However, there is no binding concession concerning a period of employment in this very unusual case. The exact alleged undisputed fact posited in defendant's separate statement is as follows: "3. Plaintiff did not sign ship's articles, and on October 14, 2003, he was employed coastwise at Terminal Island, solely due to the PMA-ILWU Labor dispute and related lockdown of California ports. [Defendant] did not agree plaintiff would be employed coastwise for any definite period of time, as the time period which the strike would remain in effect necessarily remained uncertain." To which, plaintiff responded, "Undisputed." The only fair reading of this concession is that plaintiff agreed that there was no term of employment—an essential element of his maintenance and cure damages claim in the third cause of action. If

that was all there was by way of plaintiff's concession and the parties' mutual assertion of facts, in my view, summary judgment would be the correct resolution of the case.

But the next alleged undisputed fact in defendant's separate statement is challenged by plaintiff. Defendant's next purported undisputed fact states: "4. The only written contract between [defendant] and [plaintiff's union] governing plaintiff's employment is a Union Collective Bargaining Agreement . . . ." Plaintiff disputed defendant's claim that the collective bargaining agreement was the only agreement between the parties. Plaintiff responded: "Disputed. Plaintiff's employment was also governed by a Memorandum of Understanding and [p]laintiff's union dispatch slip." Plaintiff's response cites as evidence a paragraph of his declaration which authenticates a copy of the union dispatch slip which expressly refers to a 90-day period of employment. I agree with my colleagues that the dispatch slip which refers to a 90-day time period creates a triable issue as to plaintiff's right to maintenance and cure during the period of his disability and employment.

The problem though is what to make of the concession, probably inadvertent, that the only contractual understanding is the collective bargaining agreement which, in the final analysis, does not support the theory that there was a 90-day period of employment. The answer is found in Code of Civil Procedure section 437c, subdivision (c) which states in part: "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider *all of the evidence* set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible *from the evidence* . . . ." (Italics added.) The Legislature requires *all* of the admissible evidence be considered. The Legislature has not provided that, as occurred in this case, the concession in a plaintiff's separate statement be the basis of the entry of a summary judgment order when that acknowledgment is contradicted by evidence. The Legislature requires the judiciary to consider all of the evidence that is properly posited in summary judgment litigation. This conclusion is consistent with the analysis in *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1235 [63 Cal.Rptr.2d 422] where facts pertinent to a product defect and causation were admitted but evidence indicated there was a triable controversy—a case that closely parallels this one.

No doubt, a trial court, as occurred here, is entitled to rely on a concession that an alleged undisputed fact is in fact so. But when as occurred here, a concession that a controlling alleged fact is undisputed is contradicted by

evidence cited to in the opposition separate statement, the evidence controls the outcome of the summary judgment or adjudication motion. I would limit the discussion of the effect of the concession to the foregoing analysis. For the reasons I have cited, I agree with my colleagues that the judgment must be reversed.