## ENOCHASSON v. FREEPORT SULPHUR CO. et al.

(District Court, S. D. Texas, at Galveston. July 29, 1925.)

1. Seamen ☞19—Discharge of seaman, compelled to leave post through illness incapacitating him, does not release ship or its owners.

Discharge of seaman, compelled to leave post through illness incapacitating him, without fault on his part, does not release ship or its owners.

2. Seamen ☞19—Seaman, incapacitated during "voyage" by illness, held entitled to recover wages to end of his contract.

Where a seaman during a voyage to a particular port was incapacitated by illness in the service without fault on his part, his right to wages was not limited to a termination of the voyage in the course of which the incapacity arose, but he was entitled to recover wages to the end of his contract, in addition to maintenance and cure up to that time; "voyage" referring, not to a particular passage from port to port, but to the whole term of the mariner's employment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voyage.]

In Admiralty. Suit by Gustave Enochasson against the Freeport Sulphur Company and others to recover wages. Decree as prayed for ordered.

W. E. Price, of Galveston, Tex., for libelant.

Terry Cavin & Mills, of Galveston, Tex., for respondents.

HUTCHESON, District Judge. In this case the facts are agreed that the libelant signed shipping articles with the master of the steamship Freeport Sulphur No. 1, which articles contained the following:

"It is agreed between the master and the seamen or mariners of the steamship Freeport Sulphur No. 1 New York, of which C. G. Haslund is at present master, or whoever shall go for master, now bound from the port of Freeport, Texas, to Tampico, Mexico, and return; also trading to or between the United States and the republic of Mexico or the West Indies as the master may direct, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States for a term of time not exceeding six calendar months."

The articles also contained the following: "It is also agreed that the master shall have the privilege of discharging any seaman or mariner at the termination of any voyage by giving thirty-six hours' notice and any seaman or mariner may be paid off at the termination of any voyage by giving the master thirty-six hours' notice."

Libelant was signed as third mate, at wages of $140 per month and found, for the period specified in the articles. Libelant served on board the vessel in the capacity stated from the 26th of December, 1924, to the 4th of April, 1925, and during that time the ves-

sel made many voyages between Freeport, Tex., and Tampico, Mexico, and also made two voyages to Cuba and return, under said contract. Libelant suffered an attack of dysentery while on the vessel, the trouble developing while the vessel was on a voyage from Tampico to the port of La Romana, republic of San Domingo. On account of this sickness libelant was taken to a physician by the master for treatment and advice, and was upon such advice placed by the master in the hospital in La Romana. He was paid his wages up to April 4, by the master before the United States consul at La Romana, and the consular office certified that the wages had been deposited and the seaman had been discharged on account of illness.

From La Romana libelant was sent to Porto Rico, and thence to Galveston, Tex. Arriving at Galveston on the 23d day of April, 1925, he entered the Marine Hospital and was confined there until the 15th day of May, 1925, when he was released as a convalescent and was reported able to resume his regular duties on the 26th day of June, 1925. Libelant did not earn, and could not earn, any wages between the time of being sent to the hopital in La Romana to the 26th day of June, 1925. After libelant entered the hospital at La Romana, the Freeport Surphur No. 1 sailed from La Romana on April 5, 1925, for Tampico, Mexico, and thence to Freeport, Tex., arriving at the latter port on April 15, 1925. It continued to operate under the articles for the full period of six months which terminated on June 26, 1925.

[1] On this statement libelant contends that he is entitled to his maintenance, cure, and wages, up to June 26, 1925, the termination of the six months period for which he shipped. Respondent does not contend that the facts operated as a discharge and termination of the employment in accordance with the option in the articles. It recognizes, as indeed it must, that libelant was not discharged as contemplated in the contract, but was compelled to leave his post through illness which incapacitated him without any fault on his part. Under such circumstances, a discharge would be wholly ineffective to release the ship or its owners. Halvorsen v. United States (D. C.) 284 F. 285; Great Lakes v. Geiger (C. C. A.) 261 F. 276. Respondent admits the claim of libelant for his maintenance and cure up to June 26, the termination of the shipping time, but denies the claim for wages beyond April 15, the date when the ship returned to Freeport on that particular voyage.

[2] Respondent contends that while, under The Osceola, 189 U. S. 175, 23 S. Ct. 483, 47 L. Ed. 760, The Bouker, 241 F. 831, 154 C. C. A. 533, and other cases preceding and following, as to libelant's maintenance and cure, the question of a particular voyage is not controlling, the determinative factor there is the passage of a reasonable length of time after the onset of the illness. It contends vigorously, however, that the right to wages is limited to the termination of the voyage in the course of which the sickness occurred, which under the facts of this case it contends was April 15, the return of the vessel to Freeport. Libelant contends, on the other hand, that the "voyage" referred to in The Osceola and other cases means, not a passage to a particular port and return, but the duration of the term of employment.

I have examined all of the cases cited and available on the point, and find that the lack of certainty which exists in them springs out of the fact that the discussion of the point has always proceeded from an assumption of a rule, without a full statement of the principles upon which that rule is grounded. The Osceola merely states the rules applicable in different jurisdictions, without a discussion of the principles which make those rules sound, and, as is the case where there is only a "bare bones" statement of a rule, the application of that rule continues to be involved in uncertainty. A slight reflection upon the principles which must be the basis of the rules will, I think, make it clear that the term "voyage," as used in the authorities, has reference, not to a particular passage from port to port, but to the whole term of the mariner's employment.

These principles are that a seaman is to an extent bound to his ship in a kind of personal indenture, and the ship is in return bound to him for his wages, his maintenance, and his cure. That the obligations of this indenture are mutual, and continue through the term of the employment, and the question of how many particular voyages are made during that term, is wholly immaterial, just as was, in the case of indentured servants, the question of what or how many particular journeys they made on the business of their masters. It is the strong recognition of this relation which has made so many of the judges hesitate in extending the obligations for maintenance and cure beyond the term of employment, and has resulted in most jurisdictions in limiting the generalty of Mr. Justice Story's dicta in Reed v. Canfield, 1 Summ. 195 Fed. Cas. No. 11, 641, that a ship

continues liable until the cure is completed. The fact that the use of the shorter term of employment in modern shipping has made it seem right for the courts to extend the obligation for maintenance and cure for a reasonable time beyond the termination of the engagement has not effected any change in the principle, but has merely represented a liberal, rather than a strict, application of it.

In McCarron v. Dominion Atlantic R. Co., 134 F. 762, Judge Lowell, of the District Court of Massachusetts, had the exact case before him, and decided it as the libelant here contends. There the shipping articles provided in substance for a service of six months, unless sooner discharged upon a week's notice, and it was held: "If the term of employment extend beyond the voyage, I think the former must govern"—citing The J. F. Card (D. C.) 43 F. 92. In Longstreet v. Steamboat R. R. Springer (D. C.) 4 F. 671, it is said: "I understand the law to be that, where a seaman is injured in the service of the boat, without any fault on his part he is entitled to recover his full wages for the trip or period for which he was employed, and the expense incurred in his cure."

The later cases, while not discussing the precise point, indicate, I think, clearly the same rule. In Pacific Mail S. S. Co. v. Lucas (C. C. A.) 264 F. 941, the court said: "The appellee, having fallen sick on the voyage, was entitled to recover his full wages for the trip for which he was engaged"—citing the Springer Case (D. C.) 4 F. 671. In this case the articles were for a voyage from San Francisco to Hong Kong and other points in the Orient, and return to San Francisco as the port of final discharge.

Libelant, having shipped for six months, is entitled to recover his wages to the end of his contract. Let a decree be entered for libelant for the amount sued for.