Herbert H. YOUNG, Libelant,

v.

THE Vessel ALCOA CORSAIR, her engines, tackle, apparel, and furniture, Respondent.

No. 2732.

United States District Court
S. D. Alabama, S. D.

Aug. 3, 1960.

Amended Oct. 14, 1960.

Lionel L. Layden, Moore, Simon & Layden, Mobile, Ala., for libelant.

John H. Tappan, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for respondent.

THOMAS, District Judge.

This libel was filed by a seaman without prepayment of fees or costs and without security therefor, 28 U.S.C.A. § 1916, to recover unearned wages allegedly due.

The case was submitted to the Court on a stipulation of facts and the arguments of counsel. In essence, that stipulation is as follows:

On June 2, 1959, the libelant, Herbert H. Young, signed shipping articles dated March 30, 1959, with the master of the steamship Alcoa Corsair, owned and operated by Alcoa Steamship Company of New York. Young was signed as an oiler with a salary of $363.67 a month.

The shipping articles contained the following:

"It is agreed between the master and the seamen, or mariners of the S.S. Alcoa Corsair * * *, now bound from the Port of Mobile, Alabama—for one or more continuous voyages—, to one or more ports in the West Indies or South America direct or via one or more coastwise and/or nearby loading and/or discharging ports, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding six (6) calendar months."

The S.S. Alcoa Corsair is a combination passenger-cargo vessel on regular, scheduled sailings, arriving at Mobile, Alabama, on every third Monday, and sailing from New Orleans, Louisiana, on every third Saturday following the arrival at Mobile on Monday. From the vessel's departure at New Orleans to her arrival at Mobile, she takes a voyage or trip to various ports in South America, Spain, Trinidad, and back to Mobile. The reference in the shipping articles to "bound from the Port of Mobile, Alabama, for one or more continuous voyages" is to one or more of such voyages as above described.

It is the uniform practice of the owners of the Alcoa Corsair to permit any seaman to depart the vessel while she is in Mobile or New Orleans, regardless of whether or not the period of employment described in the shipping articles has expired. This has been the practice for many years, and as a result no seaman is required to take more than one of the above-described voyages, despite the fact that articles are signed covering a six-months' period.

On June 5, 1959, the libelant suffered an injury, or became ill, in the service of the Alcoa Corsair while she was in New Orleans. It was recommended that he report to the United States Public Health Service Clinic when the vessel arrived back in Mobile. The vessel arrived in Mobile on June 23, 1959, and the libelant was declared unfit for duty on that date. He remained unfit for duty until July 6, 1959. On July 14, 1959, the libelant, in signing off the vessel, signed a re-

lease of all claims for wages which were paid him through June 23.

The libelant was paid his wages through June 23, 1959. There is no claim here for maintenance and cure. It is agreed between the parties that if the libelant is successful in this cause, the amount due him is $157.59.

The libelant contends that he is entitled to wages from June 23, the date he was declared unfit for duty, until July 6, the date he was found to be fit for duty. It is his contention that inasmuch as he signed six-months' shipping articles and the term of employment had not terminated during the period he was found to be unfit for duty, he is entitled to recover his wages.

The respondent takes the position that the articles signed by the libelant were for one or more voyages to a final port of discharge in the United States, for a term of time not to exceed six-months' duration. It further argues that because of its custom permitting seamen to depart the vessel when she is in Mobile or New Orleans, the articles should be interpreted to mean a single voyage not exceeding six calendar months' duration and not a six-months' employment period. The respondent contends, in the alternative, that when the libelant signed off the vessel by mutual consent, he executed a release of all his claims.

The issues thus raised by these facts are (1) whether or not the libelant's signing off the vessel by mutual consent constituted a release, and (2) whether the articles here in evidence obligated the libelant for the entire six-months' period or were merely for a single voyage not to exceed six-months' duration.

The respondent's defense of release by mutual consent is without merit. At the time the libelant departed the vessel on June 23, 1959, he was ill, and it was for the benefit of the vessel and the libelant that he departed. The entry in the shipping articles dated July 14, 1959, that he departed the vessel by mutual consent does not constitute a release of claims for wages from June 23 to July 6, the date on which he was declared fit for duty. Libelant left the vessel because of illness, and while his departure was voluntary, it was not voluntary in the sense that he was desirous of being relieved of work. The departure on June 23 was occasioned by necessity and not by willfulness. In signing off the vessel on July 14, and signing a release for all wages due him through June 23, libelant did not release his claim for wages to which he was entitled while incapacitated.

In support of his claim, the libelant cites the case of Enochasson v. Freeport Sulphur Co., D.C.Tex.1925, 7 F.2d 674, wherein the court had before it a question of law similar to the one presented herein. There the libelant had signed shipping articles for a period of six months which terminated on June 26, 1925. On April 4, 1925, the seaman left his vessel because of illness and subsequently brought his libel to recover wages up to the terminating date of his employment. The vessel paid his wages up to the time of completion of the voyage upon which he became ill, but refused to pay his wages to the date the articles terminated. Judge Hutcheson held that the libelant, having shipped for six months, was entitled to recover his wages to the end of his contract. In its decision, the court cites the case of Longstreet v. Steamboat R.R. Springer, D.C. Ohio 1880, 4 F. 671, wherein it is stated:

"I understand the law to be that where a seaman is injured in the service of the boat, without any fault on his part, he is entitled to recover his full wages for the trip or period for which he was employed, and the expense incurred in his cure." 4 F. at page 672.

The respondent relies on the decisions of Farrell v. United States, 1949, 336 U. S. 511, 69 S.Ct. 707, 93 L.Ed. 850, and Rofer v. Head & Head, Inc., 5 Cir., 1955, 226 F.2d 927 in opposition to the claim of the libelant.

In the Farrell decision, the Supreme Court held that a seaman who had signed shipping articles providing for a foreign voyage from the United States

and return and for a term not exceeding twelve months, was entitled to wages only to the end of the voyage and not for twelve months from the date of signing the articles. The court concludes by stating:

"The twelve-month period appears as a limitation upon the duration of the voyage and not as a stated period of employment." 336 U.S. at page 521, 69 S.Ct. at page 712.

The facts of the Farrell decision are decidedly different from the facts of this case. Here, Young signed shipping articles which specified "one or more continuous voyages" * * * (there follows a description of said voyages) * * * "for a term of time not exceeding six (6) calendar months." The stipulation clearly shows that the Alcoa Corsair normally makes more than one voyage during every six-months' period[1] rather than a single voyage of approximately six-months' duration. Obviously, this is common knowledge among the seamen who sign aboard the vessel. It is undisputed that Young would have been working had he not become ill. In the Farrell decision there is no indication of numerous regular voyages during the twelve-month period,[2] but, as the court concluded, only a single voyage not to exceed twelve-months' duration. I do not think that the articles which Young signed could be interpreted to mean that he signed for a single voyage not to exceed six-months' duration; on the contrary, the articles which he signed obligated him to serve for a fixed period of time, even though by custom he could have departed the vessel earlier.

In Rofer v. Head & Head, Inc., supra, it was determined that the voyage in question was a coastwise voyage, and that under the Supreme Court's holding in the Farrell decision a seaman who signed for such a voyage[3] was entitled to recover wages for the term of employment, the number of voyages being immaterial. Inasmuch as the libelant there was serving on a coastwise voyage, and the term of employment was one month, he was granted his wages to the end of the month which was the end of the term of employment. I do not think that case to be applicable to the facts of the immediate case because the voyage herein was a foreign voyage and not a coastwise voyage.

The determination of whether shipping articles are for a single voyage or are for a specific term of employment depends upon an interpretation of the particular articles in issue before the court, in the light of particular facts. It is not my understanding of the law as set forth in Farrell v. United States, supra, that all shipping articles for foreign voyages are to be interpreted as being for a single voyage rather than for a term of employment. I think the Supreme Court limited its interpretation to the articles before it and did not intend to establish a precedent as to all shipping articles which involved foreign voyages. For this reason, I am of the opinion that the law established in the Farrell decision has no application to the facts of this case.

The defense interposed by the respondent that its custom of allowing seamen to depart the vessel when it is

1. It is stipulated that the vessel sails on regular, scheduled sailings arriving in Mobile on every third Monday, and sailing from New Orleans on every third Saturday following the arrival in Mobile on Monday.

2. The shipping articles in the Farrell decision, due to military wartime security, provided: "from the port of Philadelphia, to a point in the Atlantic Ocean to the eastward of Philadelphia and thence to such ports and places in any

part of the world as the Master may direct or as may be ordered or directed by the United States Government or any department, commission or agency thereof * * * and back to a final port of discharge in the United States, for a term of time not exceeding 12 (twelve) calendar months." 336 U.S. at page 520, 69 S.Ct. at page 711.

3. Rofer, the libelant, had not in fact signed any shipping articles, but was sailing under an oral agreement.

in Mobile or New Orleans should relieve it of an obligation to pay this libelant wages beyond the completion of the voyage, is not well taken. Such a custom cannot relieve a vessel of its lawful obligation to furnish maintenance, and cure, and wages during disability.

A decree will be entered for the libelant in the amount of $157.59 together with interest at the rate of 6% per annum from July 6, 1959. Costs will be taxed against the respondent.