**Richard BERG, Plaintiff,**

v.

**FOURTH SHIPMOR ASSOCIATES, Defendants.**

**No. C94–84R.**

United States District Court, W.D. Washington, at Seattle.

Jan. 31, 1995.

F.Supp. 805.

Dennis P. Murphy, Anderson & Connell, Bellingham, WA, for plaintiff.

William Lawrence Black, III, Lane, Powell, Spears, Lubersky, Seattle, WA, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S UNEARNED WAGE CLAIM

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on defendant's motion for summary judgment to dismiss plaintiff's unearned wage claim. Having reviewed the motion together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. FACTUAL BACKGROUND

On January 16, 1991, plaintiff Richard Berg signed on for duty aboard the S/T OVERSEAS WASHINGTON. Forth Shipmor Associates (FSA) is the owner of the vessel and the defendant in this matter. The terms of plaintiff's Coastwise Articles of Agreement provide as follows:

> It is agreed between the Master and the seaman or mariner of the STEAM TANKER OVERSEAS WASHINGTON ... that the vessel is about to commence a voyage or voyages between ports on the Pacific or other coastwise ports, for a period not to exceed twelve calendar months.

The plaintiff was hired to work aboard the S/T OVERSEAS WASHINGTON out of the Seattle local office of the Seafarers International Union (SIU). There is a collective bargaining agreement entitled "1990 Standard Tanker Agreement" between SIU and the American Maritime Association. The American Maritime Association is a bargaining unit representing various vessel owners including defendant FSA. One provision of the plaintiff's collective bargaining agree-

ment allows seamen to leave the vessel in any port upon 24 hours notice to the master.

Plaintiff claims that on or about January 23, 1991, one week after signing on, he suffered an injury while unloading garbage from the ship. Between January 23, 1991 and February 16, 1991, the S/T OVERSEAS WASHINGTON sailed on several voyages between ports in Valdez, Alaska, and Nikiski, Alaska. On February 19, 1991, plaintiff was medically discharged from the vessel. All wages that plaintiff earned between January 16, 1991, when he began his employment, and February 19, 1991, when he was discharged, have been paid. Plaintiff, however, argues that he is entitled to unearned wages for a 12 month period which, he contends, is the contemplated term of employment established by the coastwise articles which he signed. Defendant now moves for summary judgment on plaintiff's claim for unearned wages.

## II. ANALYSIS

The summary judgment standard requires that all reasonable inferences are to be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catret*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, once the moving party has satisfied this requirement, the burden then shifts to the non-moving party to present affirmative evidence that a material fact is genuine and that an issue concerning that fact exists. *Id.*

■ Under the admiralty doctrine of maintenance and cure, injured seamen who are unable to continue working are entitled to recover unearned wages for the remainder of the voyage for which they were hired. *Gardiner v. Sea–Land Service, Inc.*, 786 F.2d 943 (9th Cir.1986), *cert. denied*, 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986) (citing *The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903)). Thus, in order to decide plaintiff's claim for unearned wages, this court must determine the duration of the plaintiff's voyage.

■ Courts often consider the articles of employment in determining what constitutes "the end of a voyage." *See Farrell v. United States*, 336 U.S. 511, 520, 69 S.Ct. 707, 711–12, 93 L.Ed. 850 (1949). 2 Martin J. Norris, *The Law of Seamen*, § 26:7, at 15 (4th Ed.1994). When a seaman is injured on foreign articles there is little question that the seaman is entitled to wages to the termination of the particular trip. 2 Martin J. Norris, *The Law of Seamen*, § 26:7 at 16. However, when a seaman is employed under coastwise articles, which commonly cover a specific period of time, the seaman may collect unearned wages for the entire period of employment contemplated by the contract. *Id.; Blainey v. American S.S. Co.*, 990 F.2d 885, 891 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 311 (1993). Seamen employed under coastwise articles, like the plaintiff, must still prove the existence of a definite period of employment. *Blainey*, 990 F.2d at 891; *Vitco v. Joncich*, 130 F.Supp. 945, 947 (S.D.Cal.1955), aff'd, 234 F.2d 161 (9th Cir.1956).

### A. *Presumption of Coastwise Articles*

It is undisputed that coastwise articles are commonly entered into for a period of time. However, this is just the beginning of the inquiry. The coastwise rule is premised upon employment being entered into for a definite period of time rather than a single voyage. *Blainey*, 990 F.2d at 891. Merely stating the general practice for coastwise voyages gets the court no closer to establishing whether or not, in the plaintiff's case, there was a definite period of employment.

### B. *The Articles*

The plaintiff contends that the language of the articles themselves conclusively sets forth a definite period of employment. The articles state "for a period not to exceed twelve calendar months."

In the Supreme Court case of *Farrell v. United States*, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949), the court interpreted foreign articles with similar language. *Id.* at 520, 69 S.Ct. at 711–12. The court considered the general custom of foreign going ships, and the fact that the seaman could not

have been required to reembark on a second voyage, and held that there was nothing ambiguous about the articles. *Id.* The court concluded that "the twelve month period appears as a limitation upon the duration of the voyage and not as a stated period of employment." *Id.* at 521, 69 S.Ct. at 712; *See also Medina v. Erickson,* 226 F.2d 475, 479 (9th Cir.1955), *cert. denied,* 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956) (concluding that "exceeding" language in articles was a limitation upon duration of the voyage).

Even in the coastwise trade, the custom of the industry plays an important role in determining whether a seaman is employed for a definite period. *Blainey,* 990 F.2d at 891. In *Blainey,* which dealt with the coastwise trade on the Great Lakes, the court pointed to a collective bargaining agreement along with the "undisputed longstanding custom" to only pay unearned wages to the end of a particular trip, and concluded that the plaintiff was not hired for a definite period.

In *Vitco v. Joncich,* 130 F.Supp. 945, again the court did not rely solely on the articles of employment. The *Vitco* court concluded that the plaintiff was employed for a definite period of time—the tuna season. *Id.* at 947.

### C. *The Collective Bargaining Agreement*

■ Additionally, unionized seamen are in a vastly different situation from the seamen of the time when the common law admiralty rules of unearned wages were formed. *Blainey,* 990 F.2d at 892. As long as the terms of a collective bargaining agreement are part of the normal "give and take" of the collective bargaining process, traditional maritime rights are subject to the bargaining process. *Gardiner v. Sea–Land Service, Inc.,* 786 F.2d 943, 949 (9th Cir.1986) (citing *Vitco,* 130 F.Supp. 945). The collective bargaining agreement between the plaintiff's union and the bargaining unit of the defendant establishes that a seaman could leave the vessel in any port upon 24 hours notice to the master. Thus, like *Farrell,* a seaman could not be required to reembark on a second voyage.

One case holds that articles containing language similar to the language in this case, "for a term of time not exceeding six calendar months," set forth a definite term of

employment. *Enochasson v. Freeport Sulphur Co.,* 7 F.2d 674 (S.D.Tex.1925). The *Enochasson* court concluded that, because the plaintiff was not discharged as contemplated in the contract, but because of a sickness acquired during one of the voyages, the plaintiff could recover unearned wages for the entire six months. *Id.* at 675. *Enochasson* does not bind this court. Taking into consideration *Enochasson's* age, the subsequent case law interpreting similar articles, and the modern day weight of collective bargaining agreements, this court rejects its reasoning.

■ The parties do not cite and the court has not found any modern cases that rely solely on the language of coastwise articles to show that a definite term of employment exists. In fact, the United States Supreme Court and the Ninth Circuit have construed such "exceeding" language to be a limitation on the length of a voyage and not a definite term of employment. *See Farrell,* 336 U.S. at 521, 69 S.Ct. at 712; *Medina,* 226 F.2d at 479. Presently, seamen receive the benefits of collective bargaining agreements and unions, making it even more likely that a seaman's term of employment is no longer governed by the shipping articles. *See Blainey.* Therefore, this court holds that the articles alone do not establish a definite period of employment.

### III. CONCLUSION

In sum, the important inquiry is whether the plaintiff is hired for a definite period of time. In a world of unionized seamen, and collective bargaining agreements, the language of the articles is no longer sufficient to establish a definite term. Case law such as *Farrell, Blainey* and *Vitco* go beyond the articles in their inquiry into whether a seaman is employed for a definite term. Plaintiff has presented no evidence of a current industry custom that would support a definite period of employment of longer duration than his traveled voyages. Thus, defendant's motion for summary judgment is GRANTED.