**Richard BERG, Plaintiff–Appellant,**

v.

**FOURTH SHIPMOR ASSOCIATES, Defendant–Appellee.**

No. 95–35230.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1996.

Decided April 26, 1996.

John N. Connell, Anderson & Connell, Bellingham, Washington, for plaintiff-appellant.

W.L. Rivers Black, III; Michael B. King; John S. Devlin, Lane Powell Spears Lubersky, Seattle, Washington, for defendant-appellee.

Before: WRIGHT, PREGERSON and TASHIMA, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Berg, a seaman, was injured on duty on Fourth Shipmor Associates' ("FSA") vessel. He filed suit alleging negligence and unseaworthiness, and the parties settled all Berg's

claims except for unearned wages. The district court granted summary judgment for FSA on that claim, and we affirm.

### BACKGROUND

Berg was a member of the Seafarers International Union. FSA hired him from the union hiring hall in Seattle to work aboard the S/T OVERSEAS WASHINGTON, an oil tanker that loaded and discharged cargo in ports in Alaska and Washington.

Shortly after joining the vessel on January 16, 1991, Berg hurt himself while removing trash on board. He reported the incident on February 18 and was discharged for medical treatment the following day. He was treated for a hernia and had fully recovered by July, 1991. FSA paid him wages through February 19.

Berg filed a Jones Act suit against FSA alleging that its negligence had caused his injury. He also alleged that the vessel was unseaworthy. He asked for general damages, past and future wages lost because of the injury, medical expenses, and unearned wages. The parties settled all claims except for unearned wages, and Judge Rothstein, in a published opinion, 879 F.Supp. 1061 (W.D.Wash.1995), granted summary judgment to FSA on that claim. Berg appeals, arguing that he is owed wages from February 19 to the date he recovered from his injury.

### DISCUSSION

I. *The Seaman's Traditional Maritime Remedies*

■ Vessel owners, who are not subject to workers compensation statutes, have unique obligations to their employees when they become ill or are injured. Irrespective of fault, the vessel owner is obliged to pay unearned wages, maintenance and cure. "Maintenance" is compensation for room and board expenses incurred while the seaman is recovering from the illness or injury. The vessel owner is also obliged to pay the seaman's medical expenses until he reaches maximum recovery, or "cure." The vessel owner must pay unearned wages for a limited period. These wages are the subject of this dispute. *See generally Gardiner v. Sea–Land Service, Inc.,* 786 F.2d 943, 945–46 (9th Cir.), *cert. denied,* 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986); *see also Blainey v. American S.S. Co.,* 990 F.2d 885, 886–87 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 311 (1993).

■ Unearned wages, a component of maintenance and cure, are different from lost wages. The term refers to the actual wages the seaman did not earn because of his injury or illness. *See Vickers v. Tumey,* 290 F.2d 426, 434 (5th Cir.1961) (explaining difference between lost wages as an element of damages and unearned wages as an element of maintenance and cure).

■ "Generally speaking, . . . whether the employment is for a voyage or for a definite time, it is the shipowner's obligation to pay a seaman who falls ill or is injured while in the service of the vessel, full wages throughout the period of employment." *Vitco v. Joncich,* 130 F.Supp. 945, 949 (S.D.Cal.1955) (citations omitted), *aff'd,* 234 F.2d 161 (9th Cir.1956). The question before us is the length of that "period of employment."

II. *Shipping Articles*

■ Courts look first to the seaman's shipping articles to determine whether he is employed for a voyage or a definite period. Shipping articles are required by statute. The statute in force when Berg signed on to the OVERSEAS WASHINGTON provided: "Before proceeding on a voyage, the master of a vessel . . . shall make a shipping articles agreement in writing with each seaman on board, declaring the nature of the voyage or the period of time for which the seaman is engaged." 46 U.S.C. § 10502.[1]

■ When a seaman and vessel owner sign "voyage articles," the determination of unearned wages is easy. Under voyage articles, the seaman signs on for one voyage, which may last for several months. If he is

---

1. The statute was amended in 1993 to read: "The owner . . . shall make a shipping agreement with each seaman in writing before the seaman commences employment." There is no legislative history explaining the change.

injured, his employer owes him wages to the end of that voyage or to the date he reaches maximum cure, whichever is sooner.[2] For example, in *Farrell v. United States* 336 U.S. 511, 520, 69 S.Ct. 707, 711–12, 93 L.Ed. 850 (1949), a seaman had signed voyage articles that provided for a single voyage not to exceed 12 months. He was injured, and his employer paid him wages to the end of the voyage, which lasted about four months. The Supreme Court held that 12 months was not a period of employment but rather a limitation on the length of that voyage. Thus, the Court reasoned, his employer's duty to pay unearned wages ended on the day the voyage actually ended.

■ When a seaman signs onto a vessel for many shorter voyages, usually in and among United States ports, as Berg did, he signs coastwise articles. According to some authorities, coastwise articles provide employment for a definite term. Norris, a leading commentator, gives this example of coastwise articles: "From New York to a port or ports in Cuba for one or more continuous round-trip voyages ... for a term of time not exceeding six calendar months." 2 M. Norris, *The Law of Seamen*, § .26:7, n. 39. He construes these articles as creating a definite period of employment:

> On coastwise voyages where the articles are commonly entered into for a period of time (as, for example, six months, etc.) rather than for a stated voyage, the seaman can recover his wages for the entire period of time contemplated by the contract where his illness or injury has not reached the maximum attainable point of cure at the expiration of that period.

*See also Enochasson v. Freeport Sulphur Co.*, 7 F.2d 674, 676 (S.D.Tex.1925) (coastwise articles not to exceed six months created six-month period of employment, despite provision for termination on 36 hours' notice); *Young v. Alcoa Corsair*, 186 F.Supp. 476 (S.D.Ala.1960) (coastwise articles for a term not exceeding six months are for a fixed term

of employment even though plaintiff could have left vessel at any time); *Farrell*, 336 U.S. at 520, 69 S.Ct. at 711–12 ("It is not questioned that the general custom in ships, *other than the coastwise trade*, is to sign on for a voyage, rather than for a fixed period.") (emphasis added); *id.* at 521, 69 S.Ct. at 712 (Douglas, J., dissenting) ("If this were a coastwise voyage there would be little question that Farrell could recover his wages for the entire twelve-month period.").

## III. Interpretation of Contract Between FSA and Berg

■ With this background in mind, we must determine whether there is a genuine issue of material fact as to whether Berg and FSA intended to contract for employment "for a definite time." *Vitco*, 130 F.Supp. at 949. However, we look not only to the articles, but to the collective bargaining agreement ("CBA") between the parties and to any extrinsic evidence of their terms. *See, e.g., Medina v. Erickson*, 226 F.2d 475, 479 (9th Cir.1955) (shipping articles are not a complete employment agreement; extrinsic evidence is admissible to clarify ambiguous terminology) *cert. denied*, 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956); *Vitco*, 130 F.Supp. at 949 (court looks to industry practice to determine contemplated length of service).

### A. The Articles

■ Berg and FSA executed Coastwise Articles of Agreement that included the following language, which FSA characterized as "traditional and customary" for coastwise articles:

> It is agreed between the Master and the seaman or mariner of the STEAM TANKER OVERSEAS WASHINGTON ... that the vessel is to commence a voyage or voyages between ports on the Pacific or other coastwise ports, for a period not to exceed twelve calendar months.

2. An example of voyage articles would be:
 "From the port of Boston, MA, to one or more U.S. Gulf ports or places and such other coastwise ports or places as the Master may direct and back to a final port or place of discharge in the United States on the Atlantic Coast north of Cape Hatteras, for a term not exceeding three (3) months."
 Coast Guard Navigation and Inspection Circular, SER 60.

FSA argues that the phrase "not to exceed 12 months" cannot mean a 12–month term of employment. While the "not to exceed" language might be interpreted as a maximum length of employment rather than a definite term, the cases and commentators cited above suggest that it has been interpreted in the industry as creating a definite period.

FSA also insists, citing *Farrell,* that the "not to exceed" language is a limitation on the length of a single voyage. But *Farrell* interprets voyage articles, not coastwise. In the coastwise trade, where each voyage is expected to last only a few days (*see Blainey,* 990 F.2d at 888), it makes little sense that the "not to exceed" term would limit the length of the voyage.

FSA contends that *Blainey,* 990 F.2d at 890–91, precludes any conclusion that coastwise articles create a definite term of employment. There the Sixth Circuit concluded that Great Lakes seamen are not entitled to unearned wages beyond the voyage on which they are injured, even if they have signed coastwise articles. But the court based its decision on "unique facts" that are not present in this case. It noted a 150–year custom of not paying unearned wages past the termination of a voyage, despite the existence of coastwise articles. It also remarked that the CBAs in place did not mention or change this custom. Most importantly, the parties there stipulated that they had no intention to be bound by the period of employment specified in the articles. *Id.*

Given the backdrop of caselaw against which these articles were signed, their language lends some support to Berg's argument that he was employed for a definite 12–month period.

### B. *The Collective Bargaining Agreement*

The CBA adds weight to FSA's argument that Berg was not hired for any definite period. His union and the American Maritime Association, of which FSA was a mem-

ber, were parties to a collective bargaining agreement, the Standard Tanker Agreement. The CBA contains some language that undermines Berg's claim to a definite 12–month period of employment.

The CBA permitted Unlicensed Personnel to quit "in any port in the Continental United States ... upon [24] hours notice to the Master prior to the scheduled sailing of the vessel." It also authorized the Master to "discharge any member of the Unlicensed Personnel upon [24] hours notice.... Should the Union object to the discharge, the matter shall be handled in accordance with grievance procedure." FSA argues that this provision means that the seaman has no expectation of employment beyond 24 hours, but there is a suggestion in the CBA that the Master may only discharge a seaman for cause.

The CBA also authorizes the Union to replace class "C" seaman with higher seniority union members after 60 days on a vessel. This section supports FSA's argument that there was no intent to sign Berg for a 12–month period.[3]

### C. *Berg's Burden on Summary Judgment*

Under *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), Berg had the burden of coming forward with "sufficient evidence to establish an element essential" to his case. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Berg has come forward with the Articles, which may be evidence of a definite period of employment. He also filed an affidavit in which he related his own expectation that he would serve for the entire time "allowed under the coastwise articles."[4]

---

**3.** Berg makes much of the fact that the WASHINGTON was shuttling between two ports while he was aboard, attempting to bring himself within Article II, § 55.1(b), which gives FSA the option of terminating articles after six months. But this section, read in context, clearly refers to

seamen working under foreign voyage articles. It is irrelevant to Berg's situation.

**4.** Berg makes reference to a conversation he had with the "steward" in which he was assured that he could work as long as he liked. We disregard this evidence. Berg did not identify the speaker,

As the district court remarked, "[i]n a world of unionized seamen, the language of the articles is no longer sufficient to establish a definite term." 879 F.Supp. at 1064. Berg failed to produce any evidence beyond the articles that would support his interpretation of the parties' agreement. The record reveals no evidence of the circumstances of the execution of the articles, no evidence of any representations the company made regarding a definite period. And Berg has not refuted the fact that the CBA's terms are inconsistent with a definite 12–month term.

## CONCLUSION

We affirm because Berg did not carry his burden of producing evidence that might persuade a trier of fact that the parties agreed on a definite term.

**AFFIRMED.**

and there is no evidence that he was an agent of FSA. The conversation took place after the contract was executed: it sheds no light on the intent of the parties at formation.